Case number 319-0607, John Landreth, Appellant v. Myers, Bailey, O'Connor & Kuzma, et al., Appellees. Good morning, everyone. Mr. Peel, you may proceed. Thank you, Your Honor. Good morning. May it please the Court, my name is Drew Peel and I represent the plaintiff appellant, John Colt Landreth. Your Honors, what brings us here today is an appeal from an award summary judgment in favor of the defendants who formerly were Mr. Landreth's lawyers. Our contention is that his lawyers were negligent in their handling of a contract lawsuit on behalf of Mr. Landreth, which was based on a contract that Mr. Landreth entered into with the municipality, the City of Ottawa. The central issues in this appeal relate to the validity of that underlying contract. Our contentions and positions are that that contract was in fact valid and enforceable under the law, and that Section 817 of the Illinois Municipal Code did not make that contract invalid for a couple reasons. First, because there's... Can I interrupt you for a second? Before you go there, I've got a question, and that is, how much did your client seek in the first complaint? He sought in excess of $450,000, Your Honor. Okay, and he's settled the cases for like $1.4 million? No, Your Honor, he hasn't collected that amount. Does he have judgments against those people for $1.4 million? He has a judgment against an attorney, Mr. Lee, for that amount, yes, Your Honor. Okay, so he's reduced that claim to a judgment, so even if you win in this lawsuit, doesn't the defendant get a set-off for $1.4 million? No, Your Honor, because we haven't collected that amount. I'm sorry, Your Honor? I don't think that's an issue. If you took a judgment against a judgment-proof defendant in a separate lawsuit, isn't that a problem for you? I don't think so, Your Honor. I think the case law reflects if the judgment's uncollectible, it can't be a set-off and preclude a recovery in another lawsuit. Okay. I believe there's case law to that effect. I don't believe that issue was briefed, but I respectfully request permission to submit a supplemental letter on that issue if that's an issue for Your Honor. Okay, well, I'll talk to my panel members later and see what they think about that. Thank you, Your Honor. Speaking on my behalf, I would like that to be done. I think it's about just to your damages. Agreeable to that, so we'll have the clerk notify the parties, because obviously the FLE would have time to respond to the authorities, so they'll send out notice to you of the timeframes. Thank you, Your Honor. I'd be pleased to address that. Reverting back to what I was saying, the central issue here really is the validity of this contract Mr. Landreth entered into with Ottawa in 2003. We contend the contract is valid and enforceable on two separate bases. The first basis is that under the law, there's an established exception for municipal contracts that are to be funded out of what's called special revenue funds, which include but aren't limited to TIF funds. They also include grants. They might include public works funds of a particular kind and other things. There's a recognized exception under the law for contracts to be funded out of those special funds that they're not subject to this Section 817 requirement that's also found in the Illinois Municipal Code. Additionally, the TIF Act... That requirement is what, Mr. Peel? The Section 817 requirement that 65 ILCS 5-8-... Well, we're not accountants here. Tell me what it means. Well, that provision of the Illinois Municipal Code says there needs to be a prior appropriation for a contract before the contract is entered into. Otherwise, the contract's void. However, Section 817 of the Municipal Code, it's our position, doesn't apply to every municipal contract. And there are a couple recognized exceptions where it doesn't apply. One of those exceptions is what's called the special revenue fund exception. The idea behind 817 is you're not committing the corporate general fund, which is subject to annual appropriation processes and other things like that. But for other funds, such as TIF funds, which are not subject to that annual appropriation process and are designed to provide a continuing and long-term source of revenues for things like development and blighted areas, there's no prior appropriation requirement. The TIF Act itself authorizes contracts necessary and appropriate to the In fact, you don't even have to have your redevelopment plan specify or authorize a particular expense before that expense is incurred. So the TIF Act, also a provision of the Illinois Municipal Code, provides additional contracting authority that's not subject to Section 817 structures. And here, your honors, we think the contract itself, the language in the contract indicates, strongly suggests that this was an exercise of the The extrinsic evidence further buttresses that, unequivocally, over two years of payments were made under this contract exclusively out of TIF funds. It was characterized beforehand as a TIF marketing consultant contract. The negotiations were between Mr. Landreth and the City of Ottawa's TIF administrator, whereby they specifically discussed the availability of TIF funds to pay for the marketing expenses being contemplated as part of the contract. So our contention is this was authorized by the TIF Act, and that if there were a question about whether it was authorized by the TIF Act, then the agreement itself, insofar as it's silent on that subject, at the very least, you look at the extrinsic evidence, and the extrinsic evidence makes clear it was the intent of the contracting parties at the time to enter into a valid contract that's expressly set forth in the contract, and then the extrinsic evidence makes clear it was a TIF Act contract, a special and so 817 would not be applicable to that contract. These arguments, however, were not raised by the defendants in the underlying lawsuit, which is why we contend, and our expert has opined, that the defendants were negligent in failing to raise these arguments. They knew all the payments under the contract had been made out of TIF funds, and yet they never once argued that the TIF Act itself authorized this contract and wasn't subject to section 817 strictures. We contend that's a dispute of fact about that issue, of course. It could not be resolved against our client on summary judgment. Now, the trial court here found that the contract was invalid, and nothing that the defendants did or failed to do could have made any difference to the outcome here, because the trial court found that the contract, because it doesn't expressly limit payment to TIF funds, must be invalid under section 817, but no case law from any Illinois court holds that there is any such plain statement requirement. In fact, we cite at least five cases which would support a contrary view, and those are, of course, the Heritage Common Partners case, authored by Judge Posner, sitting by designation in that case, a 1990 case specifically involving TIF funds, as well as the Wilson decision from the First District, the Simpson decision from the Illinois Supreme Court, the Deleu decision from the Second District, and the Branniger decision also from the Illinois Supreme Court. All of these cases make clear that's what relevant is the intent of the parties when they're entering into the contract, and here that intent is unequivocal in terms of the extrinsic evidence that they were intending to make a TIF contract or a special revenue fund contract. And again, there's plenty of intrinsic evidence that supports that characterization of the contract, as well as extrinsic evidence that supports that characterization. So we feel that the trial court erred here in establishing a new requirement under Illinois law that a contract has to expressly state the source of funding for payments and has to limit it to that source in order for section 817 to be applicable. We don't think that's what the law is, we don't think that's what the law should be, and we don't think the trial court should have resolved that against us on summary judgment. A second failing in the trial court, frankly, was its conclusion that the agreement at issue here was unambiguous on its face. There are provisions in the agreement which plainly indicate we're exercising TIF contracting authority. I would draw the court's attention to, for example, the second recital to the contract at issue, which says, whenever the code, which is the municipal code it's referring to, which includes the TIF Act, and it continues, it says, whenever the code authorizes the city to acquire, develop, and convey real property and to sell and convey such property within a redevelopment area. Now, a redevelopment area, that's a reference to a TIF-specific area acknowledged by the Act. For redevelopment areas, that's where you do your TIF work, that's where you collect your TIF revenues, and that's where you have your separate TIF districts. So there's an express reference in the second recital to this contract to the city's authority to acquire, develop, and convey real property and to convey and sell such property, and that authority to sell the property encompasses the authority to market the property. And how do we know that? Because the TIF Act also contains a separate provision which enables a municipality to enter into and bear marketing costs associated with the sale of property, and that's also cited in the brief. There is intrinsic evidence. Beyond that, the only payments that are at issue in this lawsuit are incentive compensation payments for developments occurring within a TIF district. Those are the only payments in dispute, and there's no reason to include the express territorial limitation in the agreement itself, which is referenced in Section 3D of the agreement, as well in Section 9, if there's not an intent to limit payment to those TIF districts. What the contract says is if developments are occurring outside of TIF districts, we have to negotiate in the future as to whether and to what extent there will be payment for anything. So that's, we think, clear intrinsic evidence of an intent to fund payments out of the TIF contract. But even if the court thought that there was language in the contract going in other directions, at the very least, the contract's ambiguous here, and so you have to look at the extrinsic evidence, and the extrinsic evidence is very one-sided here in terms of a continuing course of performance by the city. Every one of dozens of payments made out of TIF funds, exclusively, never a payment from the general corporate fund, only discussions before the contract about funding things out of TIF and grants and other special revenue funds, and then the contemporaneous characterization by the city itself of this as a TIF marketing consultant contract. All that strongly supports the idea here that this was an exercise of the city's TIF Act contracting authority. And again, if there were disputes about this, they couldn't be resolved against my client, Mr. Landreth, on summary judgment. Again, even the Seymour case that's cited says summary judgment is a drastic measure, and it should only be granted if the movement's right to judgment is clear and free from doubt. Respectfully, your honors, I would suggest the defendant's entitlement to judgment here was not clear or free from doubt. Well, isn't construction of a contract an issue of law as opposed? Well, it may be, your honor, if the contract is unambiguous, then it is an issue of law according to Illinois law. But determining whether the contract is unambiguous in the first instance also is a question of law. And here we say the trial court erred in determining that this contract was facially unambiguous. And again, that references back to the other language in the agreement that supports its characterization of a TIF Act. If there's language in the agreement which supports either characterization, then the agreement on its face is ambiguous. But at the very least, you look at extrinsic evidence provisionally according to this court's authority to determine whether even if it's facially unambiguous, there's a latent ambiguity there shown by the extrinsic evidence. So we feel the the trial court erred twice in that regard. It erred in finding the contract facially unambiguous, and then it further erred in failing to consider extrinsic evidence, both as to the issue of whether the contract was ambiguous about the source of payments, and as to whether how the contract should be interpreted. Well, under your approach, if the city had run out of TIF funds but still owed your client money, couldn't your client argue, well, this contract, you still owe me the money, and so pay it out of the general fund? I don't believe our client could have made that argument, Your Honor. I think, again, the position that should have been taken in the underlying lawsuit was this was a TIF obligation. It had to be paid out of the TIF accounts. And in fact, the City of Ottawa never argued below in the underlying lawsuit that it didn't have sufficient TIF funds to pay this. It simply chose at that point to recharacterize the agreement as one that was subject to Section 817 to try and evade a payment obligation that accrued under that contract. Does that answer Your Honor's question? Yeah. Okay. There are other points I would just draw the court's attention to. Section 12 of this agreement, the contract, says, you know, both parties are representing and warranting that this existing law. If that's the intent of the parties as expressed by them at the time, then it has to be a special fund contract or has to be a TIF fund contract, because then Section 817 would not be applicable, and then it would not violate existing law. So, again, there is expressed intrinsic evidence here of the party's intent to make a valid, binding, and lawful contract, and we submit that the parties actually did so here, and that they, you know, did what they needed to under the Act. The TIF Act itself, I would also note, has no provision in it that says you have to expressly invoke your contracting authority under the TIF Act and any contract entered into pursuant to that authority. It has no provision saying your contracts under the TIF Act have to limit expenditures to TIF funds. And to further answer your question, Your Honor, it's possible with a TIF district to even borrow money if you don't have current revenues available. I see my time has expired. Thank you, Your Honors, for your time and your questions. Thank you, Mr. Peel. Ms. Hamilton, you may proceed. Thank you very much, and good morning, Justices, Mr. Clerk and or Ms. Doyle. I'm not sure who's behind the box and counsel. My name is Amanda Hamilton. I represent the Appellees in this case, which is the Myers-Berry, O'Connor, and Kuzma law firm, which I've affectionately referred to as NBOK, as well as Attorney Steve Myers and Attorney Cheryl Kuzma. May it please the Court, this case is about whether the NBOK law firm committed legal malpractice by failing to raise an argument that ultimately would not have been successful in the underlying trial court. Judge Holland properly entered a summary judgment in favor of defendants, and we respectfully request that this Court affirm that finding. In requesting reversal, the plaintiff is essentially asking this Court to rewrite the terms of the plain language of a contract, which three different judges have all determined is unambiguous, plain on its face, and all of them have agreed that it's void of an issue pursuant to this Section 817 of the Illinois Municipal Code. Now, the agreement itself is found in the record at C-2119, and that's in Volume 1, and the reason I'd like to bring that up to your honors is because, obviously, I'm sure you've already read it and will be looking at it again very closely, but Judge Holland was very careful when he read over this contract, and he identified certain sections that he believed sort of emphasized the fact that this contract was not only unambiguous, but that it did put the general fund at risk and therefore violated Section 817. The first major section is Section 3 of the contract, which is found at C-2120 on the Record on Appeal, Volume 1, and Section 3 is entitled Obligations of the City. Judge Holland properly noticed that while there was a reference to the Ottawa Industrial Park TIF district, that was always used in conjunction with the word and the other parts of the city, therefore meaning that the city was not just obligated to pay Mr. Landreth out of TIF district funds or special For example, in Section A, there's a requirement that the city shall pay Landreth $5,000 a month as a retainer plus a $2,000 a month stipend for his Chicago support staff, telephone expenses, travel expenses, things of that nature. In Section B, there was a further finding that the city be required to pay Mr. Landreth close to $30,000 annually for web hosting and web modification. There's absolutely no reference to any sort of TIF fund, special revenue fund, or any other fund. It's just the city is obligated to do this under the terms of the contract. Additionally, Section C talks about how the city would be obligated to pay Mr. Landreth a percentage of the actual project costs of certain industrial developments occurring within the city, not just occurring within TIF districts. Also, Judge Holland properly evaluated Section 4 of the contract found in the record on page 2121. Section 4 talks about services of Landreth, and as the court highlighted in its order, which Judge Holland is very, very detailed and I certainly appreciate that, but he went through each of these subsections and noticed that it's always to promote the city and a TIF district, or in many instances, just to perform services for the city. So, Judge Holland properly noted that the contract was unambiguous and that it certainly contemplated an obligation by the city to pay Mr. Landreth for services for the city. It did not restrict anything to TIF districts or special revenue funds. Now, Judge Lanuti, Judge McNeil, and Judge Holland all agreed that the agreement did not restrict payment to Mr. Landreth and put the general fund at risk. Now, the whole point of Section 817 is to protect the general fund and therefore the taxpayers, to protect the municipality, and that's the Boleyn v. City of Moline case. And in looking at this contract, all three of those judges said, no, this contract as it is worded puts the general fund at risk. Additionally, Judge Holland correctly held that even if the court were to the plaintiff in this case submitted approximately 3,000 pages of exhibits in opposing the motion for summary judgment. And Judge Holland looked through those things and said, even if the court were to consider that, none of the evidence supports the plaintiff's claim that there should be a reformation of the contract so as to avoid the applicability of Section 817. As we noted, the plaintiff unequivocally testified in his deposition question, did you ever agree with if TIF district funds were available to pay it? Answer, no. That's it, 2159 of the record on appeal. So respectfully, plaintiff's claim that he would not have been able to seek payment from the City of Ottawa is contradicted by his own statement. That certainly wasn't in, we talk about the meeting of the minds, that certainly wasn't at least in the plaintiff's mind in terms of what he would be able to do, what he'd be restricted in doing. And again, the test is whether the general fund is put at risk. And just from that own statement, it's clear that the plaintiff expected to be paid regardless of whether TIF funds or special revenue funds were available. He expected to be paid under the terms of his contract. Additionally, the plaintiff fails to understand that the significantly high burden of proof that applies to asking a court to reform a written contract. I believe the cases we've cited show the plaintiff must make a showing that there's no reasonable doubt about the intent of the parties, which I think the evidence has demonstrated that that just simply isn't the case. And furthermore, as we explained in our briefs, the source of payments and a city's obligation to pay regardless of whether or not those payments are there is a material term of the contract such that reformation wouldn't have been available. So therefore my clients, as we've argued, could not be negligent for failing to raise this argument because it simply wouldn't have worked in the trial court. And that's what Judge Lanuti found, Judge McNeill, and ultimately Judge Holland in the legal malpractice case. Your Honors, we've also argued that as an alternative basis for affirmance, that the court could affirm based on the doctrine of judicial estoppel. And we sort of started to get into this. Justice Schmidt, you asked a question about what the plaintiff had collected. And if I may, if you'll allow me just a moment to get into a bit of the timeline, I am kind of a chronological person, but I think it makes sense. And I think it's important because the brief, the underlying breach of contract complaint that was filed by my clients on behalf of Mr. Landreth was initially filed. But when the city of Ottawa raised that affirmative defense or that motion to dismiss saying, wait, this contract is void of an issue because it had a conversation with Mr. Landreth and said, look, if the court determines that the contract is void, that actually opens up the possibility of then going forward on all of these tort claims. You can claim that, oh, look, there's a provision in here that they intended not to violate the law. That's a basis for a tort claim. You can claim fraudulent misrepresentation. You can claim legal malpractice against the city's attorneys. You can have all these other claims open and available to you predicated upon the fact that this contract is void of an issue. So that was something that the NBOK law firm and Mr. Landreth had discussed. Now, Mr. Berry, tragically and very unexpectedly, was killed before the tort claims were fully developed. He had drafted a complaint, which is contained in the record, a tort complaint for Mr. Landreth. But after Mr. Berry was killed, Mr. Landreth hired actually his current counsel, Mr. Peel, to prosecute all of these tort claims. And they did. They filed amended tort claims. They added claims of breach of duty, aiding and abetting, all these other claims as well. And again, that's all on the record. Judge McNeill reiterated during those tort claims that Section 817 applies and therefore the contract is void of an issue. The plaintiff actually received $79,000 from it's in plaintiff's deposition mostly, but it's C-2050-2522. And again, if you want to look at the plaintiff testifying about what he actually received, it's at C-2149-52. So through his current counsel, the plaintiff went ahead and obtained a $79,000 payment from Attorney Lee and also obtained a confession of judgment in excess of $1.4 million. The plaintiff was then to take that confession of judgment and seek to enforce it against the City of Ottawa. Rather than litigate that, the City of Ottawa paid the plaintiff $410,000. Then the plaintiff sought to enforce the rest of that judgment against Attorney Lee's former partner, Attorney Fabricius. He ultimately obtained a judgment against Attorney Fabricius for $951,719.67. And Justice Schmidt, I think you touched on a very important topic and obviously we can we can brief the issue of collectability, but as it stands today, the original breach of contract complaint sought $450,000. And as of today, Plaintiff Landreth has collected $489,000 plus a judgment for in excess of $950,000. And as we all know from Sterling Radio v. Weinstein, a legal malpractice plaintiff can be in no better position by bringing a legal malpractice lawsuit than he would have been had the underlying claim actually been successful. So I think that touches on a couple of big things. Not only does it raise an issue of can the plaintiff actually establish damages in this case, but as I argued, judicial estoppel would be appropriate. Now Judge Holland did find that all five factors were present for judicial estoppel, i.e. the that the contract was void ab initio and that he was damaged and therefore he obtained a benefit in the form of $489,000 plus a judgment in excess of $950,000. But then for purposes of this legal malpractice case was going to argue, wait, the contract was valid all along. That doesn't seem right. And that's why we raised the judicial estoppel argument. Now, again, your honors don't even need to go there. You can affirm based on Judge Holland's finding that the contract was anyway and unambiguous anyway, and therefore it never would have worked. But your honors can also take a look at the judicial estoppel argument. Now Judge Holland declined to apply it based on the Seymour v. Collins case, believing that there had to be a showing of an intent to deceive. Respectfully, we maintain that that actually is not a specific requirement of judicial estoppel. Rather, all that's necessary is we need to prove it absence of mistake or inadvertence, which I believe the record sufficiently shows. I'd like to talk briefly, your honors, about some of the cases that counsel cited. The Heritage Common Partners case, as we've discussed in our brief at length, it's a northern district order, which is neither binding nor precedential, really nor persuasive on this court. But even so, the facts of that case are so dissimilar and distinguishable from the facts here. In that case, it involved a housing project where the city had committed to a contract with someone to develop an area for what would eventually be low-income housing. And they were able to apply for the TIF funds. Then when the constituents got really upset that they were going to be doing that, they refused to accept the TIF funds and then claimed that they couldn't perform under the contract. And the northern district said, that's not really the purpose of 817. You can't use 817 to avoid your contractual responsibilities. So Heritage Partners is really not applicable to anything involved in this case. There's no evidence that the City of Ottawa was willfully trying to avoid its obligation. The whole dispute between the City of Ottawa and Mr. Landreth arose because the City of Ottawa actually obtained a development project. And separate from Mr. Landreth and Mr. Landreth claimed that under the terms of the contract, he was entitled to a portion of those development costs. So that's sort of why the whole relationship began to deteriorate. As I stated in my briefs, the Wilson, Simpson, Deleu and Brand case that are relied upon by the plaintiff are all distinguishable because they either involved oral contracts or situations where both parties agreed that there was a mutual mistake and that the court should reform the contract so as to allow them to perform. Even the plaintiff's expert testified that there's a requirement that the language of the contract should have said payments made here under shall be solely from TIF revenues. And that would be the only way to avoid the applicability of 817, which it obviously does not state. With that, Your Honors, I would respectfully yield the remainder of my time. If you have any questions, I'd be delighted to answer them. But we believe that Judge Holland made a very well-reasoned and sound decision. We would ask that you affirm it. Thank you. Are there any questions? Mr. Peel? Thank you, Your Honor. A few brief points in response. The assertion that three separate looked at the contract, found it unambiguous and found it void as a matter of law is simply not accurate. Judge Lanuti was never presented with the issues here. We contend that's the negligence. He was never given the opportunity to rule on the applicability of the TIF Act to this contract or the applicability of the Special Revenue Fund Act. He never ruled that the contract was unambiguous. The sole and only thing that he ruled on was there was no prior appropriation. And because defendants below made no argument that a prior appropriation was necessary in this case because of the Special Revenue Fund exception or the TIF Act, Judge Lanuti never ruled on that. Judge McNeil also said, look, I'm precluded from revisiting the issue of whether the contract's void or not. And again, he was precluded because, again, whilst defendants were handling the case, they lost the contract lawsuit. They recommended against pursuing an appeal. And then they filed a tort lawsuit on behalf of Mr. Landreth taking a says those five elements which are part of step one are arguably present, but he doesn't find they're present by clear and convincing evidence. Moreover, as your honors are aware, the Seymour case holds, the trial court has broad discretion when it comes to the application of judicial estoppel. And this was simply not a case in which we were playing fast and loose with the facts in order to pull a fast one. In fact, what's going on here is the defendants who were the lawyers below who made the error, who took the inconsistent positions, are now trying to benefit from those inconsistent positions and saying, you're precluded from further recovery because we recommended you take inconsistent positions. That doesn't make much sense. It's not consistent with the duty to mitigate damages associated with the malpractice. And you wouldn't want to establish a rule whereby a party has to elect irrevocably to sue their attorneys or to pursue whatever claims might be left that might be less valuable. That's the rule that would apply if you judicial estoppel here. And so again, Judge Holland did not abuse his discretion in finding judicial estoppel is inapplicable here. In terms of some of the other statements made about the record, again, Mr. Lander's deposition testimony is not unequivocal. If you look at page 2159 of the record, which is page 253 of our appendix, if you look at pages 93 and 94, 93 line 22, question, and this comes after the colloquy that Miss Hamilton referenced, question, how am I making a leap? Did you or did you not agree with Ottawa that they would only have to pay you if TIF district funds were available? Answer, no, but that was the idea. That was the arrangement. Again, there are other passages as well in Mr. Lander's deposition testimony, which made clear that he expected, anticipated, and understood he would be paid out of TIF funds. And what the trial court can't do on summary judgment is lift out the pieces of Mr. Lander's testimony that favor defendants credit and construe only those and ignore the rest. That's flatly improper and that's flatly error by Judge Holland as well. So we don't think that works. In terms of the statement at the end that our expert somehow expressed the opinion that because the contract that issue here didn't contain express language, limiting payment to TIF funds, that it was invalid under section 817, you'll look hard and long in the record to find that because it doesn't exist. Our expert didn't say that. He didn't testify to that in his deposition. It's not in the expert disclosure. So I'm not sure where Miss Hamilton is sourcing that. And I'd ask that she identify the place in the record where that set forth, because I think that's a misrepresentation of the record. Heritage Common Partners, again, a case in which there was no written contract saying, you know, you cannot tap other funds. It was a case in which, in fact, general funds might be required to pay because the municipality there didn't accept the grant and the other things which were to pay out the agreement. And what the Wilson case says on page 419 is the rule of contract law does not change because the municipality is involved. So there are not special rules of contract with respect to this one that would apply here. And Wilson also makes clear, look, it doesn't matter the form of the basis. This one's being addressed on an express contract basis. But that doesn't matter. The contract can't be valid here. You know, it wouldn't be valid here because it was oral instead of written and invalid because it was written instead of oral. That doesn't that's not a distinction that makes any sense. And again, there is intentional conduct by Ottawa here. Ottawa changed its position and its characterization of the agreement. So that's the same kind of intentional conduct in the cases that we cite, which the court found, look, a municipality can't play fast and loose with 817. If they agree to make a contract and fund it out of the special revenue fund, they can't later on prevent the creation of the fund and thereby make the contract invalid. They can't take other steps, in other words, to make the contract invalid and gain an advantage from it. And that should especially be the case here, where Section 12C of the contract represents and warrants the contract doesn't violate existing law. I see my time has expired. I greatly thank the justices for your time this morning. Thank you, Mr. Peel. Ms. Hamilton, Mr. Peel did ask for a site to the record, if you have one available right now, if you can just give it to us. Thank you, Justice O'Brien. I do. It's at the record on C-2487. The question asked of the expert, Mr. Friedman, tell me the express language that you think would exist to make it conform so it met the party's intentions and expectations. What language do you think a court would use? Answer, well, I mean, the court could use a lot of language, but it could be reformed to say payments made here under shall be solely from TIF revenues. Thank you, Ms. Hamilton. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. And with that, we will take a recess until noon.